UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LORENA CEJA, mother and next of kin to J.C., a minor, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 16-CV-0001-CVE-FHM |
| MYERS INTERNATIONAL MIDWAYS, INC., | ) ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Now before the Court is the Motion for Summary Judgment of Defendant Myers International Midways, Inc. and Brief in Support (Dkt. # 18). Defendant Myers International Midways, Inc. (Myers) argues that plaintiff claims not to know what happened when her son, J.C., was injured while riding on the Crazy Dance ride at the state fair, and she cannot prevail on a negligence claim based only on her speculation that defendant's negligence caused J.C.'s injury. Plaintiff responds that there are genuine disputes as to material facts and she argues that she should be permitted to proceed to trial under theories of res ipsa loquitur or negligence per se.

**I.**

On October 8, 2015, J.C. and his family were at the state fair in Tulsa, Oklahoma, and he was riding the Crazy Dance for the fifth time that evening. Dkt. # 18-1, at 2-3. J.C.'s sister, A.C., was on the Crazy Dance with J.C. in the same car. The Crazy Dance is a ride in which each car or pod moves around a central point and each car independently spins as it circles around the center. Dkt. # 24-5, at 4. Riders of the Crazy Dance pulled down a metal lap bar before the ride began, and the cars did not have doors. Dkt. # 24-4, at 8, 10. J.C. recalls that his left leg slipped out of the car and

he felt something "pop," but he does not know what his leg hit when he felt the "pop." Id. at 11-12. J.C. recalls that there was something wet on the floor of the car and believes that someone may have spilled something in the car. Id. At 8. When he stepped off the ride, J.C. felt a sharp pain in his left ankle and he called his mother, Lorena Ceja. Id. at 13. The ride operator helped J.C. get off the ride and J.C. sat on some steps, and he noticed a big bump on his lower left leg. Id. at 14. J.C. was taken to Saint Francis Hospital and he was diagnosed with a closed fracture of his left ankle. Dkt. # 31-2, at 2.

The ride that is the subject of this lawsuit was inspected by Allen McElyea, a ride inspector for the Oklahoma Department of Labor, on October 1, 2016. Dkt. # 18-6, at 1. McElyea also inspected the ride immediately following J.C.'s injury, and he found nothing wrong with the ride during either inspection. Id. at 2. McElyea examined the specific car in which J.C. was riding and he found nothing that would warrant shutting down the ride. Dkt. # 18-7, at 2. McElyea has inspected similar rides in the past and he is not aware of any persons being injured in a way similar to the injury suffered by J.C. Dkt. # 31-3. There is also no evidence presented by either party that there is any history of a similar accident occurring on the Crazy Dance.

Plaintiff filed this case in Tulsa County District Court alleging that J.C. "was riding Defendant's 'Crazy Dance" and while doing so, broke his leg in three places above the ankle." Dkt. # 2-4, at 1. She alleged that J.C.'s injury was caused by the negligent operation, maintenance, and performance of the Defendant," and she seeks more than $75,000 in damages. Id. Plaintiff did not allege that defendant was negligent under a theory of res ipsa loquitur or negligence per se, and the amended petition (Dkt. # 2-4) puts defendant on notice that plaintiff is proceeding with an ordinary negligence claim. Defendant has filed a motion for summary judgment (Dkt. # 18) and, relying on

2

J.C.'s deposition testimony, argues that J.C. does not know what caused his injury or if his leg actually came into contact with part of the Crazy Dance. Dkt. # 18-1, at 6. In response, plaintiff has submitted an affidavit of J.C. stating that "the force of the spinning pod and ride caused my left leg to be thrown out of the pod and strike an unknown part of the ride . . . ." Dkt. # 24-13. J.C.'s hospital records provide conflicting explanations for the cause of J.C.'s injury. Dkt. # 31-1, at 1 (EMSA billing summary stating that "[patient] was riding a spinning ride when his foot slipped out and hit the side of the ride"); Dkt. # 31-2, at 1 (emergency room notes that injury was caused when J.C. "was on a ride at an [sic] his right foot didn't get all the way in right before a metal bar close down on a [sic] causing some angulation and discomfort of his left ankle"). In response to an interrogatory, plaintiff stated that the "ride began and some time into it, the centrifugal force of the ride threw [J.C.'s] leg out of the enclosure and it struck something unknown to J.C." Dkt. # 24-3, at 5.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

### A.

Plaintiff argues that defendant can be held liable for negligence under a res ipsa loquitur theory, because the Crazy Dance was in complete control of defendant when J.C. was injured and defendant's negligence is the most probable cause of J.C.'s injury. Dkt. # 24, at 8. Defendant responds that the ride was functioning properly when J.C. was injured and defendant's alleged negligence is not the only reasonable cause of his injury, and plaintiff may not seek to invoke res ipsa loquitur merely because she lacks proof of causation. Dkt. # 31, at 7-9.

4

"Under Oklahoma law, the doctrine of res ipsa loquitur 'is a pattern of proof which may be applied to an injury that does not occur in the usual course of everyday conduct unless a person who controls the instrumentality likely to produce injury fails to exercise due care to prevent its occurrence.'" Wheeler v. Koch Gathering Systems, Inc., 131 F.3d 898, 903 (10th Cir. 1997) (quoting Qualls v. U.S. Elevator Corp., 863 P.2d 457, 460 (Okla. 1993)). "The purpose of the *res ipsa loquitur* evidentiary rule is to aid a plaintiff in making out a prima facie case of negligence in circumstances when direct proof of why the harm happened is beyond the power of knowledge of the plaintiff." Harder v. F.C. Clinton, Inc., 948 P.2d 298, 303 (Okla. 1997). To establish a prima facie case for application of res ipsa loquitur, the plaintiff has the burden to show that the instrumentality is in the complete control of the defendant and that the injury to the plaintiff would not have occurred absent negligence on the part of the defendant. Smith v. Hines, 261 P.3d 1128, 1137 (Okla. 2011). "The rule in Oklahoma is that *res ipsa loquitur* cannot be applied 'where, after proof of the occurrence, without more, the matter still rests on conjecture, or is reasonably attributable to some cause other than negligence.'" Avard v. Leming, 889 P.2d 262, 265 (Okla. 1994)). The decision whether the doctrine of res ipsa loquitur applies to a set of circumstances is determined by the court as a matter of law. Qualls, 863 P.2d at 460.

There is no dispute that the Crazy Dance was an instrumentality in the exclusive control of the defendant, but the parties dispute whether defendant's negligence can be inferred from the circumstances giving rise to plaintiff's injury. The evidence shows that McElyea inspected the Crazy Dance on October 1, 2016 and he inspected the ride immediately after J.C.'s injury on October 8, 2016, and he "saw nothing wrong with the subject Crazy Dance ride that warranted shutting the ride down after the subject accident." Dkt. # 31-3, at 1. He also was not aware of any

5

accidents on the Crazy Dance or other similar rides in the same nature as J.C.'s injury. Id. at 2. Plaintiff argues that defendant posted signs warning persons on the ride to keep their arms and legs inside the pods, and these signs show that defendant was aware of a risk that riders could be injured. However, this does not by itself show that defendant's negligence was the most likely cause of plaintiff's injury. The posting of signs warns riders about avoiding certain behavior while on the Crazy Dance, but defendant's awareness that a rider could be injured does not automatically convert every injury to a rider into an act of negligence by defendant. J.C. does not know specifically how his injury occurred, but he believes that his leg came out of the pod and came into contact with some part of the ride. Dkt. # 18-1, at 2-3; Dkt. # 24-13, at 1-2. This evidence tends to rule in that defendant's negligence could have been a cause of J.C.'s injury, but it does not tend to show that defendant's negligence is the most likely cause of the injury. J.C.'s statements are somewhat vague as to how he was injured and no one else observed the accident, and the Court cannot rule out that some intervening act, such as contributory negligence, was just as likely a cause of J.C.'s injury. Plaintiff has not met her burden to show that J.C. would not have been injured absent some negligence on the part of defendant, and this is not an appropriate case for the application of res ipsa loquitur.

Plaintiff has not shown that proof of how J.C.'s injury happened is beyond the power of knowledge of the plaintiff, and plaintiff has a theory of causation based on the alleged lack of a guard or railing to prevent injuries to riders of the Crazy Dance. Both of these factors also preclude the application of res ipsa loquitur. Under Oklahoma law, a plaintiff may rely on the doctrine of res ipsa loquitur only when "direct proof of why the harm happened is beyond the power or knowledge of the plaintiff." See Harder, 948 P.2d at 303. Plaintiff has not attempted to make such a showing

and the Court finds no basis to infer that plaintiff could not have investigated the cause of the injury to J.C. Plaintiff has not argued that the Crazy Dance ride on which J.C. was injured or an exemplar was unavailable for examination, and she may not use the doctrine of res ipsa loquitur as a substitution for investigating the cause of J.C.'s injury. Defendant also notes that plaintiff purports to know the cause of J.C.'s injury, because she claims in response to defendant's motion for summary judgment that defendant was negligent for failing to include a guard or railing to prevent the type of injury suffered by J.C. This shows that plaintiff claims to know the cause of J.C.'s injury and she is capable of presenting proof of defendant's negligence without relying on res ipsa loquitur.

**B.**

Plaintiff also argues that she can establish that defendant is liable under the doctrine of negligence per se, because there are Oklahoma statutes requiring additional safety precautions or allowing defendant to improve ride safety. Dkt. # 24, at 12-14. Defendant responds that plaintiff did not allege a negligence per se claim in her amended petition and, even if she had, plaintiff could not prevail under this theory. Dkt. # 31, at 9-10.

The Court will initially consider whether plaintiff has timely raised a claim of negligence per se. The Tenth Circuit has found that a district court may treat a new claim raised for the first time in response to a motion for summary judgment as a request to amend the complaint. Martinez v. Potter, 347 F.3d 1208, 1212 (10th Cir. 2003). This type of request to amend the complaint is considered under Fed. R. Civ. P. 15 and may be denied for untimeliness. Adams v. Garvin County Board of County Comm'rs, 2016 WL 5173395, *6 (W.D. Okla. Sep. 21, 2016). A court may consider whether the defendant will be denied the opportunity to conduct discovery on a new claim if a request to amend the complaint is asserted in response to a motion for summary judgment. Bio

7

Med Tech. Corp. v. Sorin CRM USA, Inc., 2015 WL 4882572, *9 n.8 (D. Colo. Aug. 17, 2015); Ellibee v. Simmons, 2005 WL 1863244, *1 n.3 (D. Kan. Aug. 4, 2005). A party's failure to offer a reasonable explanation for raising a new claim in response to a motion for summary judgment is also a factor weighing against allowing such an amendment. Sprint Nextel Corp. v. Middle Man, Inc., 2014 WL 6977931, *6 (D. Kan. Dec. 9, 2014).

Defendant argues that it had no notice that plaintiff was seeking to recover under a theory of negligence per se and it has had no opportunity to conduct discovery on this issue. The Court has reviewed plaintiff's amended petition and it gives no indication that plaintiff is alleging a negligence per se claim. Dkt. # 2-4, at 1. The amended petition simply states that J.C.'s injury was "caused by the negligent operation, maintenance, and performance of the Defendant," and this does not suggest that defendant's negligence was premised on any statutory violation. In response to defendant's motion in limine, plaintiff argues that her amended petition complies with the pleading standards for Oklahoma courts and she claims that defendant should have filed a motion for more definite statement if the complaint was unclear. Dkt. # 32, at 6. However, this case was removed to this Court and this Court does not apply the procedural rules applicable in Oklahoma state courts. Hill v. J.B. Transport, Inc., 815 F.3d 651, 668 (10th Cir. 2016) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."). In a removed case, federal pleading requirements are applied to determine if a claim has been adequately alleged, even if state law claims would have been adequately alleged under pleading requirements applicable in state courts. Reilly v. Cox Enterprises, Inc., 2014 WL 4473772, *3 (D.R.I. Apr. 16, 2014); Simmons v. Science Int'l Applications Corp., 2012 WL 761716, *3 (D.S.C. Feb. 13, 2012). Under federal pleading standards, plaintiff's amended petition cannot be construed to allege a negligence per se

8

claim, and there is nothing in court filings or the discovery materials attached to the parties' briefing that would have given defendant notice that plaintiff intended to allege a negligence per se claim. The Court has the discretion to construe plaintiff's response to defendant's motion for summary judgment as a request to file an amended complaint. Martinez, 347 F.3d at 1212. However, such a request would be untimely under the Court's scheduling order, which contained a deadline of May 19, 2016 to file motions to amend the complaint. Dkt. # 12. The discovery cutoff was July 18, 2016 and plaintiff's untimely request for leave to amend would deny defendant an opportunity to conduct discovery on a negligence per se claim. The Court finds that plaintiff's amended petition does not allege a negligence per se claim and any request for leave to amend to assert such a claim is untimely.

Even if the Court were to consider the merits of plaintiff's negligence per se claim, plaintiff has not come forward with any evidence that would establish that a violation of an Oklahoma statute or regulation caused J.C.'s injury and she could not prevail on a negligence per se claim. The Oklahoma Supreme Court has stated that the elements of a negligence claim are "(1) the existence of a duty on part of defendant to protect plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting therefrom." Brigance v. Velvet Dove Restaurant, Inc., 725 P.2d 300, 302 (Okla. 1986). In some cases, a court may refer to criminal or regulatory statutes to establish what "would be expected of a reasonably prudent person . . . providing courts believe the statutorily required conduct is appropriate for establishing civil liability." Busby v. Quail Creek Golf and County Club, 885 P.2d 1326, 1330 (Okla. 1994). This is known as negligence per se and, to apply this doctrine, a plaintiff must show that "1) the injury was caused by the [statutory] violation; 2) the injury was of a type intended to be prevented by the statue; and 3) the injured party was of the class

meant to be protected by the statute." Id. Under Oklahoma law, "the Commissioner of Labor shall promulgate rules and regulations for the safe installation, repair, maintenance, use, operation and inspection of all amusement rides necessary for the protection of the general public using amusement rides." OKLA. STAT. tit. 40, § 460. Plaintiff cites Amusement Ride Safety Rule OAC 380:55-9-3, which provides that "[s]afety restraints (lap bars, safety belts, chains, gates, etc.) shall be installed where there is a possibility of passengers being ejected, falling out, or receiving other injuries." Plaintiff claims that this statute creates a duty for defendant to ensure that riders of the Crazy Dance were adequately restrained. Dkt. # 24, at 13. However, the ride was inspected by an inspector for the Oklahoma Department of Labor both before and after plaintiff was injured, and the inspector did not find any violation of Oklahoma regulations that would warrant shutting down the ride. Dkt. # 31-3, at 1. After J.C.'s injury, the inspector examined the car in which J.D. was riding and found "nothing wrong." Dkt. # 18-6, at 2. Plaintiff seems to be arguing that regulations allow "minor modifications" to rides and that additional safety restraints or guards could have been added to the ride. The regulation cited by plaintiff does allow "minor modifications" of a ride subject to approval by the Oklahoma Department of Labor, but the contemplated modifications are not specifically for rider safety and no specific safety features are compelled by the regulation. Thus, a violation of the regulation cited by plaintiff could not have caused J.C.'s injury. Plaintiff has not shown that defendant violated an Oklahoma statute or regulation, and she could not prevail on a negligence per se claim.

C.

The Court has considered all of the arguments raised by plaintiff, but the Court will independently review the evidence submitted by the parties to determine if there is a genuine dispute

as to a material fact that would prevent summary judgment on an ordinary negligence claim. See Port-a-Pour, Inc. v. Peak Innovations, Inc., 2015 WL 558702 (D. Colo. Feb. 10, 2015) (citing Issa v. Comp USA, 354 F.3d 1174, 1177 (10th Cir. 2003) for the proposition that a district court must consider the merits of a claim before granting summary judgment even when the non-moving party has failed to respond to arguments concerning that claim). This is the only claim that is sufficiently pleaded in plaintiff's amended petition, and the Court cannot enter summary judgment in favor of defendant without considering all of the claims asserted by plaintiff. Plaintiff's primary argument is that defendant could have placed a guard or additional restraints on each car of the Crazy Dance that would have kept a rider's leg from slipping out of the ride. Dkt. # 24, at 10. However, plaintiff did not retain an expert and she has produced no evidence as to what type of guard would have prevented the injury to J.C.[1] Plaintiff admits that she is not seeking to hold defendant liable for any act of the operator of the ride. Dkt. # 18-2, at 4. In a footnote, plaintiff argues that it sufficient that J.C. was injured and the injury occurred when J.C.'s leg hit some part of the ride. Dkt. # 24, at 7 n.2. Oklahoma law is clearly established that the "mere fact that an injury occurs carries with it no presumption of negligence." Lewis v. Dust Bowl Tulsa, LLC, 377 P.3d 166, 170 (Okla. Civ. App. 2016) (quoting Gilham v. Lake County Raceway, 24 P.3d 858, 860 (Okla. 2001)). However, the evidence submitted by plaintiff shows that J.C.'s injury was most likely caused when his left leg came into contact with some part of the ride, and J.C. has stated that the "force of the spinning pod and ride" caused his left leg to be thrown out of the ride. Dkt. # 24-13. J.C.'s deposition testimony

---

[1] It appears that plaintiff intends to testify that a guard or railing would have prevented J.C.'s injury, and the admissibility of this testimony is challenged in defendant's motion in limine (Dkt. # 25). The Court is not ruling on the admissibility of any lay opinion testimony concerning the need for additional safety features, and this issue will be considered in the ruling on defendant's motion for limine.

suggests that the pod he was riding in was wet and this could have contributed to the accident. Dkt. # 24-4, at 9.  In ruling on a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-moving party.  Based on the evidence presented by the parties, the Court cannot conclusively rule out defendant's negligence as the proximate cause of J.C.'s injury. The Court must take into account that there is conflicting evidence as to the cause of J.C.'s injury, and a reasonable jury could conclude that some condition on the ride, such as inadequate restraints or wetness, caused J.C.'s injury.  There is no dispute that defendant had a duty to prevent injury to riders of the Crazy Dance and that J.C. was injured, and plaintiff has come forward with evidence raising a genuine dispute as to each element of a negligence claim.  Defendant's motion for summary judgment should be denied as to plaintiff's ordinary negligence claim.

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment of Defendant Myers International Midways, Inc. and Brief in Support (Dkt. # 18) is **granted in part** and **denied in part**: it is granted to the extent that plaintiff may not proceed under theories of res ipsa loquitur or negligence per se; it is denied as to plaintiff's ordinary negligence claim.

**DATED** this 31st day of October, 2016.

*[Signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE